THOMAS G. HUNGAR  
GENERAL COUNSEL

TODD B. TATELMAN  
ASSOCIATE GENERAL COUNSEL

ELENI M. ROUMEL  
ASSISTANT GENERAL COUNSEL

KIMBERLY HAMM  
ASSISTANT GENERAL COUNSEL

KRISTIN A. SHAPIRO  
ASSISTANT GENERAL COUNSEL

SARAH E. CLOUSE  
ATTORNEY

**U.S. HOUSE OF REPRESENTATIVES**  
**OFFICE OF GENERAL COUNSEL**  
219 CANNON HOUSE OFFICE BUILDING  
WASHINGTON, DC 20515-6532  
(202) 225-9700  
FAX: (202) 226-1360

April 26, 2017



FILED  
APR 27 2017  
CLERK OF THE COURT  
U.S. DISTRICT COURT  
CENTRAL DISTRICT OF ILLINOIS  
URBANA, ILLINOIS

**VIA FEDERAL EXPRESS**

United States District Court for the  
   Central District of Illinois  
Clerk's Office  
201 South Vine Street  
Urbana, IL 61802

Re: *United States v. Schock*, Case No. 3:16-cr-30061 CSB-TSH (C.D. Ill.)

Dear Clerk of Court:

     Please see the attached correspondence from my office to the Department of Justice with regard to the above-referenced matter. I would appreciate it if this could be placed on the docket. Thank you for your assistance.

Sincerely yours,

Thomas G. Hungar  
General Counsel

cc:    Hon. Colin S. Bruce, U.S. District Judge, Central District of Illinois  
       (*via Federal Express*)  
    Timothy Bass, Assistant United States Attorney (*via Federal Express*)  
    George J. Terwilliger, III (*via Federal Express*)

THOMAS G. HUNGAR
GENERAL COUNSEL

TODD B. TATELMAN
ASSOCIATE GENERAL COUNSEL

ELENI M. ROUMEL
ASSISTANT GENERAL COUNSEL

KIMBERLY HAMM
ASSISTANT GENERAL COUNSEL

KRISTIN A. SHAPIRO
ASSISTANT GENERAL COUNSEL

SARAH E. CLOUSE
ATTORNEY

**U.S. HOUSE OF REPRESENTATIVES**
**OFFICE OF GENERAL COUNSEL**
219 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6532
(202) 225-9700
FAX: (202) 226-1360

April 26, 2017

**Via Email and U.S. Mail**

Patrick D. Hansen, Acting United States Attorney
Office of the United States Attorney, Central District of Illinois
318 S. Sixth Street
Springfield, IL 62701

Re: *United States v. Schock*, Case No. 3:16-cr-30061 CSB-TSH (C.D. Ill.)

Dear Mr. Hansen:

I am writing to express my serious concern about improper investigative tactics that were apparently employed by federal agents working under the direction of your office in the above-referenced case, tactics that your office has erroneously characterized as lawful in recently filed pleadings. In particular, it appears that in May 2015, your office's agent(s) directed an administrative employee of the Peoria district office of the Illinois 18th congressional district, who was assisting your investigation as a confidential informant, to obtain office records from the congressional office and deliver them to the agent(s). At that time, by virtue of the resignation of former Rep. Aaron Schock, the congressional office was under the supervision and control of the Clerk of the U.S. House of Representatives, an elected officer of the House. No authorization to remove the records was sought or obtained from the Clerk at that time. Nonetheless, the administrative employee apparently complied with the agent(s)' request by, *inter alia*, accessing the official House email system, downloading thousands of emails, and delivering those and other documents to the agent(s) without authorization.[1]

The longstanding position of the House, adopted pursuant to the House's rulemaking power under express constitutional authority (U.S. Const. art. I, § 5, cl. 2), is that the official records of the office of a Member of Congress constitute the property of the Member. *See, e.g.*, H.

---

[1] Federal agents apparently also directed the employee to search for other documents, and at various times the employee removed additional documents from the congressional office and delivered them to the agents, also without authorization from or notice to the Clerk. With respect to at least some of those documents, your office's pleadings in this case indicate that in those instances the employee was acting on his own initiative. In any event, however, your office failed to provide notice regarding any of these events to the Clerk of the House or to my office until more than 18 months after the fact.

Patrick D. Hansen
April 26, 2017
Page 2

Con. Res. 307 (110th Cong.) (2008) ("[B]y custom [Member personal office congressional records] are considered the personal property of the Member who receives and creates them, and it is therefore the Member who is responsible to decide on their ultimate disposition . . . ."); H. Rep. No. 100-1054, at 14 (1988) ("Members' papers have been regarded as their personal property. . . ."); H. Rep. No. 99-994, at 5 (1986) (same). Absent authorization from the employing Member, employees of a Member's office have no lawful authority to remove official records from that office or to disclose them to third parties, including law enforcement. When a Member leaves office and until his or her successor is elected, the Clerk of the House "shall supervise the staff and manage the office . . . until a successor is elected." Rule II.2(i)(1), Rules of the U.S. House of Representatives (114th Cong.).

Accordingly, a request by federal law-enforcement agents for an employee of a congressional office to provide office records without authorization from the Member (and/or the Clerk, when appropriate) amounts to a solicitation of that employee to steal official records that do not belong to him or her. Such conduct likely constitutes a federal crime, both on the part of the employee who steals the records and, quite possibly, on the part of the federal agents who induce the commission of that underlying crime. *See, e.g.*, 18 U.S.C. §§ 2, 641; *see also* 18 U.S.C. § 1030. In addition, while I express no view on any Fourth Amendment questions presented in this particular case, it is self-evident that conduct like that described above may give rise to Fourth Amendment concerns. *See, e.g., Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614-15 (1989); *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971).

In addition to the apparent theft of official records discussed above, it appears that your office also arranged for the same congressional employee to surreptitiously record conversations with then-Rep. Schock and other congressional personnel. While such recording may be a legitimate law-enforcement technique in some circumstances, special constitutional concerns arise in the legislative arena, where the separation of powers precludes non-consensual review of legislative communications by Executive Branch officials in the absence of appropriate constitutional safeguards, including an opportunity to ensure that material protected by the Speech or Debate Clause may be redacted before such review occurs. *See United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 662-63 (D.C. Cir. 2007). As the D.C. Circuit has recognized, there is "no reason why the Congressman's privilege under the Speech or Debate Clause cannot be asserted at the outset of a search in a manner that also protects the interests of the Executive in law enforcement." *Id.* at 662. Unfortunately, however, it appears that the procedures followed by your office in this regard did not ensure compliance with those constitutional safeguards. *See id.*[2]

Needless to say, the House has a strong interest in assisting and advancing the proper and legitimate activities of law enforcement. In this particular case, as you know, the House has gone to extraordinary lengths to assist your office in its investigative efforts, at substantial cost

---

[2] I express no view on the question whether material privileged under the Speech or Debate Clause was in fact disclosed in these recordings. My concern is directed solely to the need for law-enforcement agents to follow proper procedures that respect the protections of the Clause when conducting investigations with the potential for disclosure of privileged legislative communications.

Patrick D. Hansen
April 26, 2017
Page 3

and effort on the part of my office, other House personnel, and outside contractors. Among other things, we have managed searches for and production of more than three million documents, and have arranged at least 24 interviews with some 15 present or former House employees. Moreover, we are continuing to respond to ongoing requests from your office for still more documents and witness interviews (including with newly identified individuals) as your investigation continues. And more generally, my office routinely coordinates efforts by House Members and offices to respond to other lawful requests for information from law-enforcement agencies, and we have an excellent record of cooperative interactions with law enforcement in this regard.

By the same token, however, I trust that your office and the Department of Justice have no interest in obtaining information by improper and potentially criminal and unconstitutional means, as appears to have occurred in this instance. I would appreciate your confirmation that my assumption is correct, and accordingly that steps will be taken to ensure that events like those described above will not occur in the future. I await your earliest reply.

Sincerely yours,

Thomas G. Hungar
General Counsel

cc: Hon. Colin S. Bruce, U.S. District Judge, Central District of Illinois (via ECF)
Hon. Rod J. Rosenstein, Deputy Attorney General
Kenneth A. Blanco, Acting Assistant Attorney General, Criminal Division